UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| VISION INTERNATIONAL PETROLEUM, LLC, *Plaintiff*, | § § § § | |
| *vs.* | § § | C.A. NO. _____ |
| VANGUARD ENERGY, LLC, *Defendant*. | § § § | [JURY] |

## ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT/MAGISTRATE JUDGE:**

**COMES NOW PLAINTIFF,** VISION INTERNATIONAL PETROLEUM, LLC and complains of **DEFENDANT,** VANGUARD ENERGY, LLC, and will respectfully show unto this Honorable Court as follows:

### I.

### JURISDICTION AND VENUE

1.01   This case falls within the diversity jurisdiction of this Court; the amount in controversy exceeds $75,000.00USD, and Plaintiff and Defendant are diverse in citizenship pursuant to 28 U.S.C. § 1332(a)(2).

1.02   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Houston and Texas City, Texas, and the product purchased by Plaintiff from Defendant was to be delivered in Texas City, Texas.

## II.

## PARTIES

2.01   Plaintiff, VISION INTERNATIONAL PETROLEUM, LLC [hereinafter "VIP" or "Plaintiff"], is a registered Texas limited liability company with its principal office located in Laredo, Texas.  Plaintiff's members are Rodolfo Tijerina and Rodolfo Tijerina, Jr., whom are both Texas residents residing in Laredo, Texas.

2.02   Defendant VANGUARD ENERGY, LLC [hereinafter "Vanguard" or "Defendant"] is, upon information and belief, a Delaware limited liability company, with its principal place of business in Florida.  Vanguard is registered to do business in the state of Texas, and may be served with process through its registered agent: Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin Texas 78731.

## III.

## FACTS

3.01   Commencing in late July 2022, VIP contacted Vanguard in order to purchase Marine Gas Oil (MGO) FOB in Houston, Texas.  In response, Vanguard sent a written communication to VIP on July 26, 2022 that included a list of the ISO 8217 MGO varieties Vanguard could supply, and requested VIP provide specifications or "specs" (desired quality and quantity) for the MGO that it desired to purchase.

3.02   In response, on July 26, 2022, VIP transmitted a "typical" Certificate of Analysis (COA) that the MGO needed to conform with.  These requirements were received, evaluated, and considered by Vanguard, and any values not understood by Vanguard were clarified by VIP at the time.

3.03   For instance, later that day, Vanguard requested clarification on the MGO density specification, and such figure was later confirmed by VIP and acknowledged by Vanguard. Vanguard did not request any additional or further information from VIP, and otherwise acted on the COA provided.

3.04   Vanguard subsequently contacted VIP on August 24, 2022, and confirmed its ability to supply VIP with the desired quantity and quality of MGO. These communications are contained in verbal and written messages between the parties wherein Vanguard represented and assured VIP it could supply the MGO VIP desired to purchase, and that the product would be in conformity with the COA and ISO 8217 2017 standards (ISO 2017). That same day (on August 24, 2022), Vanguard issued VIP a written purchase order for 1,400 MT of the MGO "discussed" in the amount of $1,081,221.75. Additionally, Vanguard communicated that it would supply the MGO to VIP at KMI terminal in the Port of Houston.

3.05   Acting in reliance upon Vanguard's promises and representations, on August 29, 2022, VIP executed and returned the purchase order to Vanguard and transferred $1,081,000 to Vanguard's account to secure purchase of the MGO.

3.06   On August 31, 2022, Vanguard informed VIP that it was switching terminals to Texas City, Texas, which VIP agreed to. However, VIP unexpectedly indicated that it required further specifications for the MGO. Despite the express language of the order, Vanguard somehow contended VIP had purchased VLSFO – and not MGO – and that that the VLSFO would meet specifications contained in a COA previously submitted by VIP on March 22, 2022.

3.07   Confused by this, Plaintiff immediately rejected the alternative product (VLSFO) that Defendant intended to substitute in place of the MGO that Plaintiff had ordered. Further, Plaintiff reminded Defendant that the VLSFO COA from March was an entirely different

3

transaction, and that VIP had specifically ordered MGO in accordance with ISO 2017 and provided a different "typical" COA on July 26, 2022.

3.08   In response, on September 6, 2022, Vanguard advised VIP that it would have to purchase a "DMA MGO" product to be in conformity with the "typical" COA provided on July 26, 2022, and advised VIP that the "DMA MGO" quantity would cost an additional $568,074.15.

3.09   Outraged by this increased figure and tactic, VIP requested an immediate refund of the $1,081,000 amount, and Vanguard informed VIP that such refund would be subject to a 18% cancellation fee contained in Vanguard's purchase order.

3.10   Despite repeated requests for refund of the $1,081,000 amount, as of the date of this filing, Vanguard has not refunded any of portion of the $1,081,000 sum.

## IV.

## CAUSES OF ACTION

**COUNT I:**   **COMMON-LAW FRAUD**

4.01   Plaintiff adopts and incorporates, as though fully set forth herein verbatim, the facts and allegations contained in paragraphs 3.01—3.10 above.

4.02   Defendant represented to Plaintiff on multiple occasions that it would supply MGO to VIP, and that product would be of a particular standard, quality, or grade when it was not. Without limitation, Vanguard represented that the requested MGO would conform with ISO 2017 and the "typical" COA provided on July 26, 2022.

4.03   Defendant's representations to Plaintiff were material because the condition of the type, standard, quality, and/or grade of the product were important factor(s) to Plaintiff in making the decision to purchase the MGO at the negotiated price.

4.04    Defendant's representations were false, and made directly in response to Plaintiff's inquiries about the quality and quantity of the MGO it sought to acquire from Vanguard, and certainly made with the specific intent to induce VIP to act in detrimental reliance on their falsity and enter into the transaction at issue.

4.05    If Plaintiff had known that Defendant's product would not conform with ISO 2017 and the "typical" COA provided on July 26, 2022, it would never have entered into the subject transaction.

4.06    Additionally and/or alternatively, Defendant failed to disclose information about the requested product that was known at the time of the transaction, and their failure to disclose was intended to induce VIP to enter into the transaction that it would not have entered into if the information had been disclosed.

4.07    Defendant knew the product it intended to sell Plaintiff was not MGO, and would neither conform with ISO 2017 nor the "typical" COA provided on July 26, 2022 during the course of the transaction.  Defendant made the false representations knowing they were false.

4.08    Defendant had reason to expect Plaintiff would act in reliance on the false representations and/or nondisclosure of material information.  During the course of the transaction, Plaintiff sought assurances from Defendant that the product that it would supply was MGO and would conform with ISO 2017 and the "typical" COA provided on July 26, 2022.

4.09    Plaintiff justifiably relied on Defendant's false representations and/or nondisclosure of material information when Plaintiff agreed to purchase the quantity of MGO from Defendant and transferred $1,081,000 to Vanguard's account to secure purchase of the product.

4.10     Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

**COUNT II:    BREACH OF CONTRACT**

4.11   Plaintiff adopts and incorporates, as though fully set forth herein verbatim, the facts and allegations contained in paragraphs 3.01—4.10 above.

4.12   On August 29, 2022, Defendant and Plaintiff executed a valid and enforceable written contract.  The contract provided that Plaintiff would purchase 1,400 Metric Tons of MGO FOB in Houston, Texas pursuant to terms "discussed" between the parties.

4.13   Pursuant to agreement between the parties, Plaintiff paid to Defendant $1,081,000 to secure purchase of the product, but when Plaintiff attempted to arrange to take delivery of the MGO, Defendant unilaterally switched the product from MGO to VLSFO – which product was not MGO and neither conformed with ISO 2017 nor the "typical" COA provided on July 26, 2022.

4.14   The substitute VLSO product Defendant attempted to offer is nonconforming and not as represented by Vanguard.  Prior to taking delivery, VIP has rejected the product that Vanguard attempted to substitute, and immediately requested return of $1,081,000 amount paid to Defendant.  Defendant Vanguard refused to do so.  Vanguard informed VIP any refund would be subject to a 18% cancellation fee contained in the purchase order.

4.13   Defendant breached the contract by failing to supply Plaintiff with quantity and quality of MGO that it ordered, purchased and paid for.  Instead, Defendant attempted a bait-and-switch by substituting VLSFO – which is an inferior and nonconforming product.  Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.  Defendant cannot lawfully charge or assess a 18% cancellation fee contained in the purchase order.

4.14   Plaintiff is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code chapter 38 because this cause of action arises from Defendant's breach of contract.

**COUNT III:   STATUTORY FRAUD**

4.15   Plaintiff adopts and incorporates, as though fully set forth herein verbatim, the facts and allegations contained in paragraphs 3.01—4.14 above.

4.16   Plaintiff and Defendant were parties to a transaction involving the sale of goods; specifically, Plaintiff was attempting to purchase 1,400 Metric Tons of MGO FOB in Houston, Texas from Defendant pursuant to terms "discussed" between the parties.  During the transaction, Defendant made false representations of material fact to Plaintiff.

4.17   Defendant made the false representations of material fact for the purpose of inducing Plaintiff to enter into a contract with Defendant.  Plaintiff justifiably relied on Defendant's false representations of material fact by entering into a contract with Defendant.

4.18   Defendant's false representations of material fact proximately caused injury to Plaintiff, which resulted in damages outlined below.  Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

4.19   Defendant violated Texas Business & Commerce Code section 27.01, which in part forms the basis of this suit, with actual awareness of the falsity of Defendant's representations, which entitles Plaintiff to exemplary damages under Tex. Bus. & Comm. Code § 27.01(c). Plaintiff is entitled to, and seeks to recover from Defendant, reasonable and necessary attorney fees, expert-witness fees, court costs, and costs for copies of depositions under Tex. Bus. & Comm. Code § 27.01(e).

**COUNT V:    FRAUD IN THE INDUCEMENT**

4.20    Plaintiff adopts and incorporates, as though fully set forth herein verbatim, the facts and allegations contained in paragraphs 3.01—4.19 above.

4.21    Additionally, and/or in the alternative, Defendant engaged in fraud in the inducement, and induced Plaintiff into the contract through the use of fraudulent misrepresentations.

4.22    Specifically, Defendant made material misrepresentations that were false regarding the goods being sold.

4.23    Defendant knew the representations were false when they were made.  Defendant intended to induce Plaintiff to act upon the representations, and Plaintiff actually and justifiably relied upon the representations and thereby suffered injury.

4.24    Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

**COUNT VI:    UNJUST ENRICHMENT**

4.25    Plaintiff adopts and incorporates, as though fully set forth herein verbatim, the facts and allegations contained in paragraphs 3.01—4.23 above.

4.26    Additionally, and/or in the alternative, Defendant was unjustly enriched by taking a benefit from Plaintiff through fraud, duress, or undue advantage.

**COUNT VII:    MONEY HAD AND RECEIVED**

4.27    Plaintiff adopts and incorporates, as though fully set forth herein verbatim, the facts and allegations contained in paragraphs 3.01—4.26 above.

4.28    Additionally, and/or in the alternative, Defendant holds money that, in equity and good conscience, belongs to Plaintiff.  Induced by false and fraudulent representations, Plaintiff paid to Defendant $1,081,000 to purchase 1,400 Metric Tons of MGO FOB in Houston, Texas

pursuant to terms "discussed" between the parties. After such payment was made, and prior to accepting delivery of the product, Defendant informed Plaintiff that it intended to switch the product from MGO to VLSFO – which is an inferior and nonconforming product. Plaintiff demanded Defendant return the $1,081,000 paid, but Defendant refused to do so.

4.29   Plaintiff seeks liquidated damages in the amount of at least $1,081,000, which is within the jurisdictional limits of this Court. Moreover, Plaintiff's injury resulted from Defendant's malice or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

## V.

## VICARIOUS LIABILITY

5.01   Alternatively, at the time of the events giving rise to this lawsuit, Defendant had intentionally granted Matthew Klann, Scott Bradley, and Pierre Galoppi the authority to act on Defendant's behalf. At the time of the events giving rise to this lawsuit, Matthew Klann, Scott Bradley, and Pierre Galoppi were each acting within the scope of the authority granted by Defendant.

5.02   Alternatively, Defendant knowingly permitted the appearance that Matthew Klann, Scott Bradley, and Pierre Galoppi were authorized to act on Defendant's behalf, or otherwise acted with such a lack of ordinary care as to clothe Matthew Klann, Scott Bradley, and Pierre Galoppi with the indicia of authority to act on Defendant's behalf.

5.03   Defendant's conduct caused Plaintiff to reasonably believe that Matthew Klann, Scott Bradley, and Pierre Galoppi had authority to act on Defendant's behalf. Plaintiff justifiably relied on Matthew Klann, Scott Bradley, and Pierre Galoppi's authority to act on Defendant's behalf.

## VI.

## DAMAGES

6.01     As a direct and proximate result of the conduct of Defendant, Plaintiff has sustained damages in excess of $1,081,000 and within the jurisdictional limits of this Court.

6.02     Plaintiff seeks exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a) and Texas Business & Commerce Code §§ 27.01(c)-(d).

6.03     Plaintiff seeks recovery of all damages, including actual, consequential, and exemplary.

## VII.

## ATTORNEY'S FEES

7.01     Plaintiff seeks to recover reasonable and necessary attorney fees, expert-witness fees, court costs, and costs for copies of depositions under Texas Business & Commerce Code § 27.01(e) and Texas Civil Practice & Remedies Code chapter 38.

## VIII.

## INTEREST

8.01     Plaintiff seeks recovery of pre-judgment and post-judgment interest in accordance with law and equity as part of its damages herein.

## IX.

## JURY DEMAND

9.01     Plaintiff respectfully demands a jury trial.

## X.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, VISION INTERNATIONAL PETROLEUM, LLC, respectfully prays that Defendant, VANGUARD ENERGY, LLC be cited to appear and answer herein as the law dictates, and that upon final hearing hereof, that Plaintiff have and recover judgment of and from the Defendant, with pre- and post-judgment interest as allowed by law, costs of Court, and all such other and further relief, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

GILMAN ✤ ALLISON LLP

*/s/ Douglas T. Gilman*
Douglas T. Gilman
Texas Bar No. 24048496
Federal I.D. No. 19897
dgilman@gilmanallison.com
Brenton J. Allison
Texas Bar No. 24040417
Federal I.D. No. 36863
ballison@gilmanallison.com
Michael S. Prejean
Texas Bar No. 24092993
Federal I.D. No. 2513911
mprejean@gilmanallison.com
2005 Cullen Blvd.
Pearland, Texas 77581
Telephone: (713) 224-6622
Facsimile: (866) 543-3643

**ATTORNEYS FOR PLAINTIFF**